## W. D. MILLER *v.* C. & G. B. TATE.

The defendants, the factors of the plaintiff, effected insurance on their stock of tobacco and other merchandize in four different insurance companies. Some of the insurances were for six months, others for a year, and at different rates. The rate of insurance was equal to one-eighth of one per cent. per month. The plaintiff, in the accounts rendered of sales of tobacco, was charged one-fourth of one per cent. per month for insurance. *Held :* That the defendants were not to be considered as plaintiff's agents in the insurances they had effected, but they are to be considered as being themselves the insurers of the plaintiff at the rate of one-fourth of one per cent. per month, and as having re-insured at the best terms they could obtain in the different insurance offices in the city.

The plaintiff's tobacco having been lost by fire, the defendants are not entitled to charge commissions on sales not actually made. Their liability to the plaintiff is that of insurers.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.

*Semmes & Edwards*, for plaintiff. *Elmore & King*, for defendants and appellants.

BUCHANAN, J. The plaintiff, a tobacco manufacturer in Lynchburg, Virginia, sues defendants, commission merchants in New Orleans, for the alleged value of certain tobacco shipped by the former at various times to the latter, for sale on commission, and of which the petition states that the defendants have refused to render an account, although frequently requested so to do, under a pretence that the tobacco has been destroyed by fire.

The defendants complain, with great apparent reason, of the unfairness of this statement of the plaintiff's cause of action. In truth the defendants appear to have rendered various accounts to plaintiff; the latest some five or six months previous to the institution of this suit, embracing the whole of the balance on hand of plaintiff's tobacco at the time of a fire which actually occurred on defendant's premises about two months previous to the rendition of of that account.

The real subject of dispute between the parties is the value of said balance of plaintiff's tobacco in defendant's hands at the time of the said fire and the correctness of certain charges in defendant's last account for commissions, &c.

As much of the argument has turned upon the insurances effected by defendants in five different insurance offices, to the aggregate amount of fifty thousand dollars upon their stock, composed of tobacco and other merchandize, in the store consumed by the fire of the 16th March, 1854, and upon the settlement made by the defendants with those insurance companies, it is proper that we should premise by declaring that, in our opinion, the defendants are not to be viewed as plaintiff's agents in effecting those insurances.

Some of those insurances are for six months, others for a year; the former at three-fourths of one per cent. premium, the latter at one and one-half per

MILLER
v.
TATE.

cent. premium. That rate of premium is equal to one-eighth of one per cent. per month. But defendants charge plaintiff one-fourth of one per cent. per month for insurance in the several accounts rendered; said insurance being calculated upon each lot of plaintiff's tobacco sold by defendants to the day of sale. It is clear, therefore, that the defendants became themselves the insurers of the plaintiff at the rate of one-fourth of one per cent. per month, and re-insured on the best terms they could obtain in the different insurance offices in the city.

The rate of premium charged by defendants to plaintiff appears to be the same as that charged to their other numerous customers, and by uninterrupted acquiescence on the part of plaintiff, has become binding upon him by this time, even supposing that he may have had the right to object to it originally.

It is particularly to be observed that plaintiff makes no objection to his factors becoming themselves the insurers of his tobacco.

The insurance account of defendants with plaintiff is obviously in the nature of an open policy with an uncertain term, of which the former are the underwriters. The insurances effected by defendants with the Home, the Sun, and other insurance companies, were, on the contrary, particular fire risks, with a specified term. There was no privity of contract between plaintiff and those insurance companies.

Considering, then, the defendants as the insurers of plaintiff, we are next to inquire what is the proof of loss?

At the time of the fire in defendant's store, there were in said store, unsold, belonging to plaintiff:

    1 Box tobacco, *Natural Bridge*, weighing 100 pounds.
    137 Boxes tobacco, *E. Lipscomb*, weighing 13,700 pounds.
    28 Boxes tobacco, *Miller's Best*, weighing 728 pounds.
    17 Boxes tobacco, *G. W. Norwood*, weighing 1700 pounds.
    90 Boxes tobacco, *Norwood & Street*, weighing 9000 pounds.

To ascertain the value of these several brands of tobacco per pound, there are two methods indicated by the evidence, namely, the last sales of each brand previous to the fire and the estimation of merchants trading in the article of the market value of each brand at the time of the fire.

We find no sales of *Natural Bridge* proved.

The last sale of the *E. Lipscomb* was on the 9th March, 1854, one week before the fire, one box at 16 cents per pound.

The last sale of the *Miller's Best* was February 4th, 1854, one box at 25 cents per pound.

There is no evidence of sales of the *G. W. Norwood* and *Norwood & Street* brands.

Two merchants in the tobacco trade, *E. A. Rawlins* and *A. Glenn*, have given a certificate, which is in evidence, of the cash value per pound, previous to the damage from the fire, of several brands of manufactured tobacco, estimated from samples saved from the fire in defendants' store.

Among the brands contained in that certificate are only two of those for which compensation is claimed in this suit, namely, *E. Lipscomb* and *Norwood & Street*. The former is estimated in the certificate at thirteen cents a pound and the latter at eight cents. Both of the signers of that certificate have been examined on the trial of this cause as witnesses, and the result of their examination is far from satisfactory as to their means of judging correctly in relation to

HARVARD LAW SCHOOL LIBRARY

MILLER
*v.*
TATE.

the value, before the fire, of the tobacco submitted to their inspection, and even in relation to the identity of the brands mentioned in their certificate. Those brands are thirty-six in number.

*Mr. Rawlins* states: "Made the appraisement a week or ten days after the fire. The tobacco was piled up in tiers—should say there were 1500 to 2000 boxes of tobacco there. There were many of the boxes badly burnt—some of them mostly burnt. Some had the brands visible and distinct. There were probably fifteen or twenty brands in the lot which they could identify. Examined a box of each particular brand, as witness thought. There were many of the brands which could not be identified by them." This witness does not specify what are the brands identified. But he says "that he was not acquainted with the *Norwood & Street* brand," and "cannot say that he ever examined the *Norwood* brand."

*Mr. Glenn* says: "This tobacco was badly burnt. There was only a portion of the tobacco that had boxes on it. Between 400 and 500 packages had boxes on it. There were about 2000 packages in their original state, without their boxes; the balance was loose tobacco in piles. The whole of the 400 or 500 boxes which he speaks of had one head burnt off, and some had two or three sides burnt off. A tobacco box has four sides and two heads. Could not decipher the marks or brands. There were between three and six of the brands which he could identify by having the smoke washed off with soap. The outside of the tobacco was changed, and the inside was badly damaged by being in the fire."

*Mr. Glenn*, no more than *Mr. Rawlins*, could specify the brands which he had identified.

Another certificate, made by two merchants at the instance of defendants, is in evidence as to the value of the *Norwood & Street* brand on the 28th November, 1853, between three and four months previous to the fire. It is stated to be 13 cents a pound.

The only other evidence of the cash value of these tobaccos at the time of the fire is that of defendants' clerk, *Smith*, who declares that he considers the same to be correctly stated in account No. four, being as follows:

*Natural Bridge*, 18 cents per pound.
*E. Lipscomb*, 9 cents per pound.
*Miller's Best*, 10 cents per pound.
*Norwood* and *Norwood & Street*, 8 cents per pound.

But this witness corrects himself immediately afterwards, by saying that he considers the *Norwood & Street* brands worth ten cents instead of eight. As there were no sales of this brand during the three months that elapsed from the date of *Twitty* and *Oliver's* certificate, and as plaintiff did not think fit to examine either of those gentlemen to contradict *Smith's* testimony as to the value of the *Norwood & Street* brands at the time of the fire, (although both *Twitty* and *Oliver* were in court as witnesses on the trial of the case,) we may infer that he could not have done so successfully.

On a review of the whole case we find actual sales of two of the brands proved, the *Lipscomb* and the *Miller's Best*. Those sales, extending through a period of many months, show a great uniformity in the market price of those brands—the former at fifteen and the latter at twenty-five cents. Actual sales are the surest criterion, and must outweigh the opinion of the clerk of defendants, as expressed in his testimony quoted above. It is true that *Goodman*,

another witness of defendants, has placed even a lower estimate on the *Miller's Best* brand than *Smith;* but *Goodman* himself proves a sale by defendants of the whole lot of this brand to himself at twenty-five cents. He returned it indeed, having found one box inferior to sample. But he does not prove any other of the twenty-eight boxes but that one to have been so; neither does *Smith* prove anything of the sort, although the lot was in the store of defendants for some months afterwards, and five boxes were sold at different times, and all for twenty-five cents a pound, without any reclamation being made. We will, therefore, assess this brand at the value affixed by the judgment of the District Court, with the exception of one box, proved by *Goodman* to have been mouldy, and which we value at the price affixed to the brand in the defendants' account and *Smith's* testimony, say ten cents. The *Miller's Best* was in small packages of twenty-six pounds each.

The *Lipscomb* brand, as we have said, was sold in small lots at various times, running through the period of a year or more, at a very uniform rate of fifteen cents, reaching on two occasions as high as sixteen. But it evidently was very heavy at that rate; and there is in evidence a letter of plaintiff to defendants, dated 6th March, 1854, and which must have come to hand just about the time of the fire, in which defendants were instructed to *close out* this brand at ten cents a pound or ship it to Boston. It is probable from the evidence that defendants might have *closed out* the *Lipscomb* at ten cents, in conformity to those instructions, had not the fire intervened. We shall, therefore, assess this brand at that rate.

Upon the value of the *Natural Bridge* brand there is no dispute; and for reasons expressed above we adopt *Smith's* estimation, ten cents, as the value of the *Norwood* and of the *Norwood & Street* brands.

Defendants cannot be allowed commissions except upon actual sales made by them. It is a mere fiction to treat the destruction of the tobacco as a sale. And as to the auctioneer's sales of tobacco damaged by the fire, there is not the slightest proof of the identity of any of the lots sold by that officer with the tobacco of plaintiff. The number of packages of manufactured tobacco in defendants' store at the time of the fire was certainly over four thousand, of which only two hundred and seventy-three belonged to plaintiff.

The auction sales comprise twelve hundred and seventy-seven boxes, divided into fifty lots, and fourteen lots of loose tobacco. No marks or brands of any kind are affixed to any of the lots.

For the same reason the maturity of payment fixed by defendant's account, (November 5th, 1854,) seems purely fanciful and not binding upon plaintiff. Defendants liability for the plaintiff's tobacco destroyed by fire is that of an insurer. Supposing defendants to have been entitled, in that capacity, to sixty days delay for paying the loss, in the absence of any stipulation to that effect, yet the sixty days had elapsed long before the institution of this suit, and there appears no foundation for the charge made in defendants' account of two per cent. discount for anticipated payment.

We allow the charges of one-quarter per cent. per month premium for insurance, and six cents a box per month storage, as calculated upon the whole of the plaintiff's tobacco sold and burnt, to the dates of the several sales and of the fire, in defendants' account No. two in the record.

We state the account between the parties, according to the foregoing principles, under the evidence and the agreements of counsel on file, in a schedule

MILLER
*v.*
TATE.

MILLER
*v.*
TATE.

hereto annexed, showing a balance in favor of plaintiff of eight hundred and sixty-three dollars and twenty-three cents.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that plaintiff recover of defendants eight hundred and sixty-three dollars and twenty-three cents, with interest on three hundred and twenty-eight dollars and twenty cents from March 16th, 1854, and on five hundred and thirty-five dollars and three cents from 3d November, 1854, with costs of the District Court, those of appeal to be borne by plaintiff and appellee.

### SCHEDULE.

*Wm. D. Miller, Dr.*, to *C. & G. B. Tate:*

| | |
|---|---:|
| To balance per account current rendered July 20th, 1853 . . . . . . . . . . | $2425 33 |
| To balance from *W. D. M.* in final settlement . . . . . . . . . . . . . . . . . | 863 23 |
| | $3288 56 |

*Cr.*

| | | |
|---|---:|---:|
| By nett proceeds tobacco sold per account sales June 5th, 1854 . . . . . . | $391 97 | |
| "     "     "     "     " June 6th, 1854 . . . . . . | 392 24 | |
| Nett value of tobacco burnt March 16th, 1854, as follows: | | |
| 1 Box *Natural Bridge*, 100 lbs., @ 18 c . . . . . . . . . . . . . . . . | $18 00 | |
| 137 Boxes *Lipscomb*, 13,700 lbs., @ 10 c . . . . . . . . . . . . . . . . | 1370 00 | |
| 27 Boxes *Miller's Best*, 702 lbs., @ 25 c . . . . . . . . . . . . . . | 175 50 | |
| 1 Box *Miller's Best*, 26 lbs., @ 10 c . . . . . . . . . . . . . . . . | 2 60 | |
| 17 Boxes *G. W. Norwood*, 1700 lbs., @ 10 c . . . . . . . . . . . . | 170 00 | |
| 90 Boxes *Norwood & Street*, 9000 lbs., @ 10 c . . . . . . . . . . | 900 00 | |
| | $2636 10 | |
| Five per cent. off for cash . . . . . . . . . . . . . . . . . . . . . . . . | 131 75 | |
| | | $2504 35 |
| | | $3288 56 |

SPOFFORD, J., absent.